# COURT OF APPEALS OF VIRGINIA

## Record No. 2068-24-4

PENDLETON HOUSE LIMITED DIVIDEND HOUSING ASSOCIATES LP

v.

CITY COUNCIL FOR THE CITY OF ALEXANDRIA, ET AL.

Present: Judges AtLee, Friedman and Senior Judge Annunziata
Argued at Alexandria, Virginia

Opinion Issued July 7, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Rebecca J. Wade, Judge

Roy R. Shannon, Jr. (Minturn T. Wright; Shannon & Wright LLP, on briefs), for appellant.

Robert W. Loftin (John J. Woolard; McGuireWoods LLP, on brief), for appellee Ladrey Developer, LLC.

(Constantinos G. Panagopoulos; Sarabeth H. Rangiah; Ballard Spahr LLP, on brief), for appellee Alexandria Redevelopment Housing Authority.

(Travis S. MacRae, Senior Assistant City Attorney; Office of the City Attorney, on brief), for appellee City Council for the City of Alexandria.

### MEMORANDUM OPINION BY
### JUDGE RICHARD Y. ATLEE, JR.

Pendleton House Limited Dividend Housing Associates, LP (Pendleton) appeals the circuit court's order sustaining demurrers to its amended complaint against the City Council for the City of Alexandria (City Council), Ladrey Developer LLC (Ladrey), and the Alexandria Redevelopment Housing Authority (Authority), which challenged approval of certain land use applications. On appeal, Pendleton primarily argues that the circuit court erred in approving the land use applications,

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

which negatively impacted existing easements benefiting Pendleton. Finding no error in the circuit court's decision, we affirm.

BACKGROUND

The Authority owns an entire two-acre city block near the waterfront in Alexandria (Project Block). In 1975, the City granted special use permit (SUP) numbers 1005 and 1005(a) (collectively SUP 1005), permitting the Authority to construct the Ladrey Building on part of the Project Block. By October 1975, the Authority had subdivided the Project Block. By 1976, the Authority had granted the City an emergency vehicle access easement (Emergency Easement).[1] Construction on the Ladrey Building was completed in 1978.

Pendleton leases land on the Project Block from the Authority. In 1981, the Authority and Pendleton[2] applied for a SUP to construct the Annie B. Rose House (Rose House). In 1982, the City Council approved SUP 1448 and an amended SUP 1005. SUP 1448 amended SUP 1005 by removing a 30-foot portion of the Emergency Easement. According to Pendleton, SUP 1448 also provided for an ingress-egress easement (Ingress Easement), running from Pendleton Street to Wythe Street. SUP 1448 also contemplated that the Project Block "be under single ownership to be developed under CO planned development." To further the Rose House project in 1982, the City, Pendleton's predecessor, and the Authority entered a contract that was recorded in Deed Book 1059, page 70. Pendleton currently owns and operates the Rose House, located in the southwest corner of the Project Block, which sits on the property it leases from the Authority.

After about 40 years, the Ladrey Building had aged, and the Authority and Ladrey sought to demolish it and rebuild a new home for the elderly or disabled. The Authority, through its

---

[1] The Emergency Easement aimed to satisfy the fire department.

[2] Rosenberg & Freeman, Inc. initially developed the project, applied for the SUPs, and entered the contracts, but Pendleton is a successor in interest to Rosenberg.

developer Ladrey, applied for rezoning, a master plan amendment, and a development SUP to demolish two existing buildings and construct an affordable 270-unit building for elderly or disabled people.  Pendleton was not a party to the 2023 applications because it was not a part of the Ladrey redevelopment project.

Pendleton opposed the Ladrey redevelopment because it would negatively impact the Emergency Easement and the Ingress Easement.  It complained that residents of Rose House would be limited to using the Rose House driveway to access the Rose House.  According to Pendleton, this change would result in pedestrians having no safe sidewalk access to a public right of way.

On January 4, 2024, the Alexandria Planning Commission unanimously approved the Master Plan Amendment No. 2023-00006, and it recommended that the City Council approve Development SUP 2023-10011 and Zoning Map Amendment (REZ) No. 2023-00004.  These approvals followed a public hearing with public comments, including comments from Pendleton's counsel and Rose House representatives.

The City held a public hearing on January 20, 2024.  The City heard from Pendleton, Ladrey, and other speakers.  Pendleton's counsel acknowledged being at the public hearing.  And Pendleton's counsel specifically referenced SUP 1448 at the public hearing.  At the end of the meeting, the City Council unanimously approved SUP 2023-10011 and REZ 2023-00004.

Pendleton then sued the City, Ladrey, and the Authority.  Pendleton alleged that SUP 2023-10011 vacated the Emergency and Ingress Easements that were part of SUP 1448.  According to Pendleton, the City Council and Authority could not amend SUPs 1005 and 1448 without Pendleton's consent.  Pendleton claimed that the City Council failed to consider SUPs 1005 and 1448 when approving the 2023 applications.  Pendleton requested that the trial court enter a judgment declaring that approval of the 2023 applications was improper, arbitrary, and capricious,

and resulted in an unauthorized amendment of SUPs 1005 and 1448. Pendleton also sought entitlement to continuing access to the existing easements through the Project Block.

After the City Council sought oyer of the legislative record, the defendants demurred. The circuit court granted oyer and held a hearing on the demurrers. The circuit court sustained the demurrers and granted Pendleton leave to amend. Pendleton moved to reconsider and suspend the order. The circuit court denied the motion for reconsideration, and it found the suspension motion to be moot.

Pendleton amended its complaint. Defendants again demurred and moved to dismiss. After considering the parties' arguments, the circuit court sustained the demurrers and dismissed the amended complaint with prejudice. The court explained that the legislative action was fairly debatable, and Pendleton failed to show otherwise. The court further found that there was no due process violation because Pendleton's representatives were present at the City's hearing and had an opportunity to be heard. And Pendleton had not shown that the City Council ignored other special use permits. Rather, the new SUP amended the preexisting SUPs. Pendleton now appeals.

ANALYSIS

On appeal, Pendleton argues that the circuit court erred by: (1) failing to apply Section 12-600(B)(5)(a) of the city zoning ordinance to SUP 2023-10011; (2) presuming the City Council "knew what they were doing" and knew about SUPs 1005 and 1449 when approving SUP 2023-10011; and (3) failing to find that Pendleton had vested property rights in the existing project for SUP 2023-10011. For the following reasons, we disagree and affirm.

We review a circuit court's judgment sustaining a demurrer de novo. *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156 (2022). We likewise review de novo interpretation of statutes and ordinances, but "the legislative act of a local government with respect

- 4 -

to zoning is reviewed under a 'fairly debatable' standard." *Rowland v. Town Council of Warrenton*, 298 Va. 703, 710 (2020) (quoting *Renkey v. Cnty. Bd. of Arlington Cnty.*, 272 Va. 369, 373 (2006)).

A. *Pendleton fails to assign error to the circuit court's holding that the legislative decision was fairly debatable, so that holding is the law of the case.*

In Virginia, once "a party challenging a rezoning decision presents evidence of its unreasonableness, the locality must present sufficient evidence to show the decision was 'fairly debatable' in order to have the decision upheld in court." *Id.* at 718. "[F]airly debatable" means that evidence could "'lead objective and reasonable persons to reach different conclusions.'" *Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583, 590 (2001) (quoting *Bd. of Supervisors v. William*, 216 Va. 49, 58 (1975)). The inquiry is whether there is "*any* evidence" in the record sufficiently probative to render the government action fairly debatable. *Bd. of Supervisors v. Robertson*, 266 Va. 525, 537 (2003) (quoting *Bd. of Supervisors v. Stickley*, 263 Va. 1, 11 (2002)). The required *any* evidence may be found in the petition, exhibits, or legislative record before the court by oyer. *See Byrne v. City of Alexandria*, 298 Va. 694, 701-02 (2020) (sustaining demurrer based in part on legislative record).

"We have long recognized that because the decision of a zoning authority is legislative in nature, a reviewing court should not be concerned with whether the decision was right or wrong." *Rowland*, 298 Va. at 718. Legislative decisions are presumed valid because "[z]oning is inescapably a political function" deserving deference. *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 828 (4th Cir. 1995); *Norton v. Bd. of Supervisors*, 299 Va. 749, 755 (2021). The General Assembly empowered local governing bodies to weigh statutory factors and render legislative decisions. *See* Code §§ 15.2-2283, 15.2-2284.

Here, however, Pendleton does not assign error to the circuit court's finding that the approval of the 2023 applications was fairly debatable. "[W]hen a party fails to challenge a decision rendered by a court at one stage of litigation, that party is deemed to have waived [its]

right to challenge that decision during later stages of the 'same litigation.'" *City of Charlottesville v. Sclafani*, 300 Va. 212, 219 (2021) (second alteration in original) (quoting *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008)). Accordingly, the ruling has become the law of the case. We now turn to whether the City Council's legislative process complied with applicable zoning law.

B. *The City Council complied with zoning ordinances and is presumed to have been or was aware of other legislative decisions, including SUPs 1005 and 1448.*

Section 12-600(B)(5)(a) of the Alexandria zoning ordinance addresses the written consent of owners of the land subject to an amendment to a SUP. It provides:

> (5) Permitted amendments.
>
> (a) A change to a CO planned residential/commercial development or a portion thereof which, as of January 24, 1998, has been fully constructed, and for which an as-built site plan has been required, is permitted by an amendment to the special use permit authorizing the development; provided, that the change is consistent with the regulations applicable to the zone in which the development is situated.

Ordinance § 12-600(B)(5)(a). Pendleton argues that this ordinance meant that any new SUP would only be allowed by an amendment of the SUP that authorized the development. Pendleton contends that the new SUP authorizing the Ladrey project did not amend or even consider SUP 1448. In denying Pendleton's motion for reconsideration, the circuit court rejected this argument, stating that the City Council had properly considered the ordinance.

Because Section 12-600(B)(5)(a) allowed amendment of SUP 1448, we turn to whether the City Council complied with the procedures for amending the SUP. Ordinance § 12-600(B)(1) provides:

> An approved CO planned residential/commercial development is a special use permit use. Any amendment to such an approved development may be approved pursuant to the procedures for amending special use permits in section 11-500 of this ordinance.

And Ordinance § 11-509 provides:

> For any use that now requires a special use permit, whether or not a special use permit has been granted previously, any change in the nature of the use or any enlargement, extension or increase in the intensity of that use shall require a separate special use permit issued by the city council, unless the change qualifies for administrative approval as a minor change to an approved special use permit under section 11-511.

Ordinance § 11-509 authorized the amendment of SUPs 1005 and 1448 through the City Council's approval of a separate SUP. Here, the City Council's approval of SUP 2023-10011 effectively amended SUPs 1005 and 1448. Although SUP 2023-10011 does not specifically reference SUPs 1448 and 1005, it necessarily amended those SUPs by modifying the Emergency and Ingress Easements.

Pendleton's argument that the City Council failed to consider SUP 1448 fails because Pendleton itself highlighted the potential impacts to SUP 1448 to the City Council at the public hearing, and the legislative body is presumed to be aware of applicable law. *See In re Watford*, 295 Va. 114, 121-22 (2018) ("In construing legislation, . . . we will presume that the legislature acted with full knowledge of the law as it stood bearing on the subject." (quoting *Cape Henry Towers, Inc. v. Nat'l Gypsum Co.*, 229 Va. 596, 600 (1985))). Failure to consider factors on the record does not render a legislative decision arbitrary and capricious as a matter of law. *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 19 (2024). Accordingly, Pendleton's argument that the City Council did not consider appropriate factors is unavailing.

C. *Pendleton's vested rights argument does not invalidate the legislative decision.*

Ordinance § 12-600(B)(6) requires the *owner* of a parcel to apply for an amendment to an approved CO planned residential commercial development. Here, Pendleton pleaded that it was

not the owner of the parcel in question. Accordingly, the circuit court correctly determined that only the Authority had to apply for issuance of SUP 2023-10011.

Approval of SUP 2023-10011 did not deprive Pendleton of its property interest without due process. Pendleton has not shown that its alleged property rights in the SUPs differed from the public's and could not be changed with future legislation. The Ingress and Emergency Easements were public easements owned by the City of Alexandria. Pendleton acknowledged that the Authority "granted the City" the Emergency Easement, and the Ingress Easement derived from SUPs 1448 and 1005, which were subject to statutory amendment. Just as SUP 1448 modified easements in SUP 1005, subsequent legislation governing the Authority's overall two-acre Project Block could modify the Ingress Easement.[3] And SUP 2023-10011's impact on the Ingress Easement did not deprive Pendleton of its use of the Rose House.

The cases Pendleton cites are inapposite. For example, in *Board of Supervisors v. Medical Structures, Inc.*, 213 Va. 355 (1972), the same entity owned the property and held the SUP. Here, Pendleton is not the owner of the land; it only owns the Rose House. And in *Medical Structures*, the amended zoning ordinance prohibited nursing homes, whereas the amendments here did not prohibit use of the Rose House. Pendleton can still use its Rose House for its intended purpose, despite modification of the Emergency and Ingress Easements.

To satisfy due process, legislative acts, such as zoning amendments, require that a locality "meet statutory notice and hearing requirements." *See, e.g.*, *County of Fairfax v. S. Iron Works, Inc.*, 242 Va. 435, 444 (1991). Here, Pendleton was afforded due process to protect its interests, through notice and an opportunity to participate in the City Council's meeting. *See id.* (finding no violation of due process where county satisfied statutory notice and hearing requirements);

---

[3] The application for SUP 1448 provided that the "subject property (2 acre tract) must be under single ownership to be developed under CO planned development."

*Bollinger v. Bd. of Supervisors*, 217 Va. 185, 186 (1976) (finding no violation of due process where there were general guidelines and standards for enacting and administering zoning ordinances). Thus, Pendleton has not shown lack of due process.

CONCLUSION

The circuit court properly considered the record, and it found the legislative approval of the 2023 applications to be fairly debatable. Finding that the City Council's legislative act complied with applicable zoning ordinances and due process, we affirm the circuit court's judgment.

*Affirmed.*